**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

CHER A. D.,[1]                                6:20-cv-00439-BR

          Plaintiff,                          OPINION AND ORDER

v.

**COMMISSIONER OF SOCIAL
SECURITY,**

          Defendant.

**LAURIE B. MAPES**
Attorney at Law
P.O. Box 1241
Scappoose, OR  97056
(503) 543-2900

**LUKE MOEN-JOHNSON**
Drew L. Johnson, P.C.
1700 Valley River Dr., Ste. 100
Eugene, OR  97401
(541) 434-6466

          Attorneys for Plaintiff

────────────────────

[1] In the interest of privacy this Court uses only the first name
and the initial of the last name of the nongovernmental party in
this case.  Where applicable, this Court uses the same
designation for the nongovernmental party's immediate family
member.

1 - OPINION AND ORDER

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**LEISA A. WOLF**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3621

          Attorneys for Defendant

**BROWN, Senior Judge.**

     Plaintiff Cher A. D. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Disabled Widow's Benefits (DWB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

     For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for the immediate calculation and payment of benefits.

2 - OPINION AND ORDER

## **ADMINISTRATIVE HISTORY**

On April 11, 2017, Plaintiff protectively filed her applications for disability benefits.  Tr. 222.[2]  In that application Plaintiff alleges a disability onset date of January 1, 1983.  Tr. 222.  On February 2, 2018, Plaintiff filed an application for disabled widow's benefits.  Tr. 229.  In that application Plaintiff alleges her husband died on February 14, 2017.  Tr. 231.  The ALJ states in his Opinion that Plaintiff protectively filed both applications on December 27, 2017, and alleged a disability onset date of February 14, 2017, in both applications.  Tr. 13.  There is not any information in the record to clarify these discrepancies.  Plaintiff, however, appears to concede in her Opening Brief that the disability onset date for both applications is February 14, 2017, for purposes of this Court's review.  Pl.'s Br. (#8) at 4.

Plaintiff's applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on April 30, 2019.  Tr. 13, 32-76.  Plaintiff and a vocational expert (VE) testified at the hearing.  Plaintiff was

---

[2] Citations to the official Transcript of Record (#7) filed by the Commissioner on July 16, 2020, are referred to as "Tr."

represented by an attorney at the hearing.

On June 5, 2019, the ALJ issued an Opinion in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 13-24.  Plaintiff requested review by the Appeals Council.  On January 17, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the final decision of the Commissioner. Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On March 17, 2020, Plaintiff filed a Complaint in this Court seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born on August 28, 1967.  Tr. 22, 222. Plaintiff was 49 years old on her alleged disability onset date. Tr. 22.  Plaintiff has at least a high-school education. Tr. 22.  Plaintiff has past relevant work experience as a sales clerk, cashier II, drama teacher, and administrative clerk. Tr. 22.

Plaintiff alleges disability due to Post-Traumatic Stress Disorder (PTSD), cachexia (a weakness and wasting of the body due to severe chronic illness), migraines, pelvic inflammatory

disease, arthritis, nerve damage in the right foot, and
sciatica.  Tr. 78-79.

Except as noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 16-21.


## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110
(9th Cir. 2012).  To meet this burden, a claimant must
demonstrate her inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."  42
U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when
there is ambiguous evidence or when the record is inadequate to
allow for proper evaluation of the evidence.  *McLeod v. Astrue*,
640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,*
276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision

if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.  42
U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*,
682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is
"relevant evidence that a reasonable mind might accept as
adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11
(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690
(9th Cir. 2009)).  "It is more than a mere scintilla [of
evidence] but less than a preponderance." *Id.* (citing
*Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's
testimony, resolving conflicts in the medical evidence, and
resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591
(9th Cir. 2009).  The court must weigh all of the evidence
whether it supports or detracts from the Commissioner's
decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th
Cir. 2008).  Even when the evidence is susceptible to more than
one rational interpretation, the court must uphold the
Commissioner's findings if they are supported by inferences
reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d
1047, 1051 (9th Cir. 2012).  The court may not substitute its

judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454
F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY ANALYSIS

**I.   The Regulatory Sequential Evaluation**

At Step One the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity (SGA).  20 C.F.R. § 404.1520(a)(4)(i).  *See
also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir.
2011).

At Step Two the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  20 C.F.R.
§§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d
at 724.

At Step Three the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.  20 C.F.R.
§ 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The
criteria for the listed impairments, known as Listings, are

enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also*

*Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the

Commissioner to show a significant number of jobs exist in the

national economy that the claimant can perform.  *Lockwood v.*

*Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

The Commissioner may satisfy this burden through the testimony

of a VE or by reference to the Medical-Vocational Guidelines (or

the grids) set forth in the regulations at 20 C.F.R. part 404,

subpart P, appendix 2.  If the Commissioner meets this burden,

the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).


## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in

substantial gainful activity since February 14, 2017,

Plaintiff's alleged disability onset date.  Tr. 16.

At Step Two the ALJ found Plaintiff has the severe

impairments of major depressive disorder; PTSD; history of

eating disorder; spine disorder; and disorders of the muscle,

ligament, and fascia.  Tr. 16.

At Step Three the ALJ concluded Plaintiff's medically

determinable impairments do not meet or medically equal one of

the listed impairments in 20 C.F.R. part 404, subpart P,

appendix 1.  Tr. 16.  The ALJ found Plaintiff has the RFC to
perform light work.  Tr. 18.  The ALJ concluded Plaintiff has
the ability to understand, to remember, and to carry out short,
simple, routine job instructions consistent with unskilled work.
Plaintiff can have only occasional cursory interactions with
coworkers and the public.  Tr. 18.

At Step Four the ALJ concluded Plaintiff is unable to
perform her past relevant work.  Tr. 22.

At Step Five the ALJ found Plaintiff can perform other jobs
that exist in the national economy such as photocopy-machine
operator, collator operator, and routing clerk.  Tr. 23.
Accordingly, the ALJ found Plaintiff is not disabled.  Tr. 24.


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) failed to
provide clear and convincing reasons supported by substantial
evidence in the record for discounting Plaintiff's testimony;
(2) failed to evaluate properly the medical evidence;
(3) improperly adopted the opinions of nonexamining physicians
regarding Plaintiff's RFC; and (4) failed to provide legally
sufficient reasons for rejecting lay-witness statements.

**I.    The ALJ erred when he discounted Plaintiff's subjective
       testimony regarding her mental-health symptoms.**

Plaintiff contends the ALJ erred when he failed to provide
clear and convincing reasons for discounting Plaintiff's
testimony.

**A.    Standards**

The ALJ engages in a two-step analysis to determine
whether a claimant's testimony regarding subjective pain or
symptoms is credible.  "First, the ALJ must determine whether
the claimant has presented objective medical evidence of an
underlying impairment 'which could reasonably be expected to
produce the pain or other symptoms alleged.'"  *Garrison v.
Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter
v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The
claimant need not show his "impairment could reasonably be
expected to cause the severity of the symptom [he] has alleged;
[he] need only show that it could reasonably have caused some
degree of the symptom."  *Garrison*, 759 F.3d at 1014 (quoting
*Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A
claimant is not required to produce "objective medical evidence
of the pain or fatigue itself, or the severity thereof."  *Id*.

If the claimant satisfies the first step of this

analysis and there is not any affirmative evidence of
malingering, "the ALJ can reject the claimant's testimony about
the severity of [his] symptoms only by offering specific, clear
and convincing reasons for doing so." *Garrison*, 759 F.3d at
1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,
883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of
malingering based on affirmative evidence thereof, he or she may
only find an applicant not credible by making specific findings
as to credibility and stating clear and convincing reasons for
each."). General assertions that the claimant's testimony is
not credible are insufficient. *Parra v. Astrue,* 481 F.3d 742,
750 (9th Cir. 2007). The ALJ must identify "what testimony is
not credible and what evidence undermines the claimant's
complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834
(9th Cir. 1995)).

**B.    Analysis**

Plaintiff testified she is unable to work because of
her "unstable emotions." Tr. 54. Plaintiff testified she
"triggers easily" due to a history of abuse and PTSD, and she
gets upset and angry. Tr. 54. Plaintiff also asserts she has
systemic sclerosis, scar tissue in her spine and neck, and long-

term depression.  Tr. 54-55, 57.  She contends she has
difficulty using her hands to grasp and her systemic sclerosis
causes her to have a lot of pain and shortness of breath.
Tr. 19, 55.

      The ALJ concluded Plaintiff's medically determinable
impairments could reasonably be expected to cause Plaintiff's
alleged symptoms.  Tr. 19.  The ALJ, however, found Plaintiff's
statements concerning the intensity, persistence, and limiting
effects of her symptoms are inconsistent with the medical
evidence and other evidence in the record.  Tr. 19.  For
example, on June 18, 2017, Tanja Kujac, M.D., performed a
consultative physical examination of Plaintiff.  Tr. 390-94.
Dr. Kujac reported Plaintiff does not have any postural,
manipulative, or environmental limitations; she is able to stand
and to walk for up to six hours; and she does not have any
limitation as to her sitting capacity.  Tr. 394.  Dr. Kujac also
noted Plaintiff easily walked into the examination room, was
able to sit in the examination chair, and was able to briskly
transfer from the chair to the examination table and back.
Tr. 391.

      On this record the Court concludes the ALJ provided

13 - OPINION AND ORDER

legally sufficient reasons for discounting Plaintiff's
allegations regarding her physical limitations.

The ALJ, however, did not provide clear and convincing
reasons for discounting Plaintiff's subjective testimony
regarding her mental-health symptoms.  The ALJ concluded
Plaintiff was "treated conservatively with therapy, mindfulness
meditation, and yoga, and she declined to take medications"
(Tr. 20), but the record does not support this reasoning.  For
example, in December 2017 Plaintiff told her provider at the
White Bird Medical Clinic that she wanted "to try counseling and
natural/holistic remedies as opposed to medications for
treatment."  Tr. 406.  Plaintiff, however, was later prescribed
medications, which she took for her anxiety.  Tr. 559-60.  The
ALJ acknowledged Plaintiff's use of medications, but he stated
Plaintiff discontinued their use "despite their efficacy with
controlling her symptoms."  Tr. 21.  Although Plaintiff stopped
taking her medications in February 2019, the record reflects it
was only because she broke up with her boyfriend and she left
the house without her medications.  Tr. 533.  She later obtained
new prescriptions and resumed taking her medications.  Tr. 537.
The record, however, reflects Plaintiff continued to experience

anxiety, nightmares, anger, and mood swings despite taking her
medications.  Tr. 537, 578.

        The ALJ also discounted Plaintiff's testimony based on
Plaintiff's daily activities.  The ALJ noted Plaintiff "is able
to prepare simple meals, shower daily, maintain friendships, use
public transportation without assistance, shop, do her laundry
by hand, use a computer, read, make art, and complete all
household chores."  Tr. 20.  The record, however, reflects on
June 22, 2017, Plaintiff reported to Pamela Roman, M.D., during
a psychodiagnostic assessment that Plaintiff "tries" to shower
every day, and she only "knows how" to do household chores.
Tr. 397.  Although Plaintiff reported she goes grocery shopping,
she stated she may break down and sit on the floor crying while
shopping.  Tr. 56-57.  Plaintiff also needs reminders to take
her medications and encouragement to attend to her personal
care.  Tr. 295.  Guthrie Crawford, a friend, reports Plaintiff
gets upset, has outbursts, and "just leaves" when stressed.
Tr. 327-32. George Rode, another acquaintance, described
Plaintiff as a "[v]ery sweet person until something goes wrong
or not expected," and then Plaintiff starts to "tense up," to
quiver, to raise her voice, and "get[s] close to abusive."

Tr. 376.  Doyle Shaw, another friend, described Plaintiff as a "really nice person" until she has a PTSD episode and starts crying.  Tr. 374.  Jon Correll, another friend, also stated Plaintiff has frequent episodes at night, wakes up in tears, and "will jump in her car and leave, spending the night in her car crying."  Tr. 360.  Dr. Roman noted Plaintiff was observed weeping while completing the forms for her evaluation.  Tr. 398. Plaintiff cites to numerous instances in the record that reflect her tearfulness and crying in front of medical professionals. *See* Pl.'s Br. (#8) at 24.

On this record the Court concludes the ALJ erred when he discounted Plaintiff's testimony regarding her mental-health symptoms and failed to provide legally sufficient reasons supported by substantial evidence in the record for doing so.

**II. The ALJ erred in his evaluation of the medical opinions of Dr. Roman and Zac Schwartz, Ph.D., a treating psychologist.**

Plaintiff contends the ALJ failed to evaluate properly the "persuasiveness" of the medical opinions of Dr. Schwartz, Plaintiff's treating psychologist, and Dr. Roman, an examining psychologist.

**A.    Standards**

The Court notes the regulations regarding evaluation

16 - OPINION AND ORDER

of medical evidence have been amended and several of the prior
Social Security Rulings, including SSR 96-2p, have been
rescinded for claims protectively filed after March 27, 2017.
The new regulations provide the Commissioner "will no longer
give any specific evidentiary weight to medical opinions; this
includes giving controlling weight to any medical opinion."
*Revisions to Rules Regarding the Evaluation of Medical Evidence*
(*Revisions to Rules*), 2017 WL 168819, 82 Fed. Reg. 5844, at
5867-68 (Jan. 18, 2017). *See* 20 C.F.R. § 404.1520c(a). Instead
the Commissioner must consider all medical opinions and
"evaluate their persuasiveness" based on "supportability" and
"consistency" using the factors specified in the regulations.
20 C.F.R. § 404.1520c(c). Those factors include
"supportability," "consistency," "relationship with the
claimant," "specialization," and "other factors." *Id.* The
factors of "supportability" and "consistency" are considered to
be "the most important factors" in the evaluation process. *Id.*
*See also Revisions to Rules*, 82 Fed. Reg. 5844.

In addition, the regulations change the way the
Commissioner should articulate his consideration of medical
opinions.

17 - OPINION AND ORDER

> First, we will articulate our consideration of
> medical opinions from all medical sources
> regardless of whether the medical source is an
> AMS [Acceptable Medical Source]. Second, we will
> always discuss the factors of supportability and
> consistency because those are the most important
> factors. Generally, we are not required to
> articulate how we considered the other factors
> set forth in our rules. However, when we find
> that two or more medical opinions . . . about the
> same issue are equally well-supported and
> consistent with the record but are not exactly
> the same, we will articulate how we considered
> the other most persuasive factors. Third, we
> added guidance about when articulating our
> consideration of the other factors is required or
> discretionary. Fourth, we will discuss how
> persuasive we find a medical opinion instead of
> giving a specific weight to it. Finally, we
> will discuss how we consider all of a medical
> source's medical opinions together instead of
> individually.

*Revisions to Rules*, 82 Fed. Reg. 5844.

Although the regulations eliminate the "physician
hierarchy," deference to specific medical opinions, and
assigning "weight" to a medical opinion, the ALJ must still
"articulate how [he/she] considered the medical opinions" and
"how persuasive [he/she] find[s] all of the medical opinions."
20 C.F.R. § 404.1520c(a) and (b)(1). The ALJ is required to
"explain how [he/she] considered the supportability and
consistency factors" for a medical opinion. 20 C.F.R.
§ 404.1520c(b)(2). Accordingly, the court must evaluate whether

the ALJ properly considered the factors as set forth in the
regulations to determine the persuasiveness of a medical
opinion.

**B.    Analysis**

    **1.    Dr. Roman**

        On June 22, 2017, Dr. Roman, an examining
psychologist, performed a Psychodiagnostic Assessment of
Plaintiff.  Tr. 395-402.  Dr. Roman diagnosed Plaintiff with
PTSD, major depressive disorder, child and adult abuse, and mild
neurocognitive disorder from a traumatic brain injury.  Tr. 400.
Dr. Roman concluded Plaintiff is able to understand and to
remember simple instructions and might be able to understand and
to remember more complicated instructions in a supportive
setting.  Tr. 400.  Dr. Roman noted Plaintiff was applying for
Social Security benefits, which suggests that she can manage to
recall instructions at least intermittently.  Tr. 400.
Dr. Roman, however, noted Plaintiff's possible head trauma could
affect Plaintiff's ability to understand and to remember complex
instructions.  Tr. 400.  Based on her examination, Dr. Roman
also concluded Plaintiff would not be able to maintain attention
and concentration on even a part-time basis without decompen-

19 - OPINION AND ORDER

sating and being extremely distracting to others.  Tr. 401.

  The ALJ concluded Dr. Roman's diagnosis of PTSD
and depression was consistent with Plaintiff's treatment
history.  Tr. 20.  The ALJ, however, found Dr. Roman's diagnosis
of neurocognitive brain disorder "not persuasive" on the ground
that it was based primarily on Plaintiff's self-report of injury
without corroborating medical evidence.  Tr. 20.

  The partial reliance on a claimant's self-
reported symptoms does not provide a reason to reject a
psychiatrist's opinion.  *Buck v. Berryhill*, 869 F.3d 1040, 1049
(9th Cir. 2017).  Here Dr. Roman conducted a clinical interview,
documented a mental-status examination, and administered four
objective tests.  Accordingly, the ALJ's conclusion that
Dr. Roman "relied heavily" on Plaintiff's self-report is not
consistent with or supported by the record.

  The ALJ also found Dr. Roman was unaware that
Plaintiff had worked for her husband's business before and after
her alleged head injury, and, therefore, Dr. Roman's conclusion
that Plaintiff was unable to perform even part-time work was not
persuasive.  Tr. 20.

  Plaintiff, however, points out that Dr. Roman was

20 - OPINION AND ORDER

aware that Plaintiff had worked for her husband as noted in

Dr. Roman's report:

> [Plaintiff] worked with last her husband
> (*sic*) who did taxes, saying she took care of
> the mail, talked to people and cleaned his
> office.  After his stroke he was somewhat
> paralyzed and so she had to drive him
> places.  She said she was not a bookkeeper
> so much as his assistant. . . .
>
> [On testing Plaintiff] could do simple
> addition, subtraction and multiplication but
> made simple errors such as answering 9+7=17
> and 17-9=12.  This is unusual given her
> self-report that she helped her husband do
> taxes.

Tr. 396, 399.  Plaintiff contends the ALJ misread Dr. Roman's

report, and, therefore, his rejection of Dr. Roman's opinion is

not supported by substantial evidence in the record.  The Court

agrees.

On this record the Court concludes the ALJ erred

when he discounted Dr. Roman's medical opinion because the ALJ

did not provide legally sufficient reasons supported by

substantial evidence in the record for doing so.

### 2.  Dr. Schwartz

Dr. Schwartz was Plaintiff's treating mental-

health provider from April 2018 through April 2019.  Tr. 655-58.

On March 5, 2019, Dr. Schwartz completed a Mental Residual

Functional Capacity Assessment of Plaintiff.  Tr. 646-51.  In a

letter accompanying his assessment Dr. Schwartz noted:

> [Plaintiff] clearly suffers extreme symptoms
> of PTSD and anxiety that stems from a hoist
> (*sic*) of developmental traumas and
> exacerbated by current situations.  While
> she is very bright and talented and can
> function at moments, she is completely
> unable to seek or maintain regular
> employment as her mood swings and symptoms
> would prevent her from the minimal amount of
> reliability and stability necessary [to]
> maintain such employment.
>
> While she is making progress in treatment,
> she will not gain the stability and
> reliability necessary for sustainable
> employment in the foreseeable future.

Tr. 651.  Dr. Schwartz opined Plaintiff has moderate limitations

in her ability to understand and to remember short and simple

instructions, to sustain an ordinary routine without special

supervision, to make simple work-related decisions, and to ask

simple questions or request assistance.  He opined Plaintiff has

moderately severe limitations in her ability to remember

locations and work-like procedures; to understand, to remember,

and to carry out detailed instructions; to maintain socially

appropriate behavior and to adhere to basic standards of

neatness and cleanliness; to respond appropriately to changes in

the work setting; and to be aware of normal hazards and to take

appropriate precautions.  Dr. Schwartz also opined Plaintiff has

severe limitations in her ability to maintain attention and

concentration for extended periods; to perform activities within

a schedule, to maintain regular attendance, and to be punctual;

to work in coordination with or in proximity to others without

being distracted; to complete a normal workday or workweek

without interruptions caused by her psychological symptoms; to

perform at a consistent pace without an unreasonable number and

length of rest periods; to interact with the general public; to

accept instructions and to respond appropriately to criticism

from supervisors; to get along with coworkers or peers; to

travel in unfamiliar places or use public transportation; and to

set realistic goals or to make plans independently of others.

Tr. 647-49.

          The ALJ found Dr. Schwartz's opinion "not

persuasive" on the ground that it is "wholly inconsistent with

his own progress notes" and the "reaming medical evidence" and

that Dr. Schwartz's treatment notes consistently show Plaintiff

was making "steady progress."  Tr. 21.  The ALJ also asserted

Plaintiff described "a variety of daily tasks she is able to

complete independently."  In addition, the ALJ found even though

23 - OPINION AND ORDER

Plaintiff's emotional responses to stress are consistent with
her diagnosis, "she has not received the level of treatment one
would see with an individual experiencing disabling psycho-
logical symptomatology resulting in a lack of employability at
any level." Tr. 21.

As noted, the ALJ is required to apply five
factors to determine the persuasiveness of a medical opinion:
(1) supportability; (2) consistency with other evidence in the
record; (3) the medical sources' relationship with the claimant
including length, frequency, and extent of treatment; (4) the
medical source's area of specialization; and (5) other factors
including familiarity with other evidence and the requirements
of the disability program. 20 C.F.R. § 404.1520. Support-
ability and consistency are considered the most important
factors. 20 C.F.R. § 404.1520c(c).

### a.   Dr. Schwartz's Treatment Notes

A conflict between a treating doctor's opinion
and his treatment notes may provide a reason to discredit his
opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).
Treatment notes indicating the patient has improved, however,
must be read "in context of the overall diagnostic picture" and

24 - OPINION AND ORDER

"do[] not mean that the person's impairment no longer seriously affects her ability to function in the workplace." *Holohan v. Massanari*, 246 kF.3d 1195, 1205 (9th Cir. 2001).

Here the ALJ disregarded "the context" of Dr. Schwartz's treatment notes that support disability. At the start of his treatment in April 2018 Dr. Schwartz described Plaintiff's symptoms as anxiety, sleep disruption, hyper-vigilance, intrusive memories, and placing herself in dangerous situations. Tr. 655. Although Dr. Schwartz consistently described Plaintiff's progress as "good," "very good," and even "excellent," his records also describe the context of Plaintiff's condition. For example, on May 1, 2018, in his notes Dr. Schwartz reported Plaintiff was very emotional and "hair triggery" (Tr. 656); in June 2018 Plaintiff was "venting mistakes and [the] urge to put herself in harms way" (Tr. 656); in July 2018 Plaintiff was doing "lots of venting" (Tr. 656); in August 2018 Plaintiff was feeling more optimistic but still "shaky" (Tr. 656); in September 2018 Plaintiff expressed "confusion and frustration with self . . . unable and not worth it" (Tr. 657); in October 2018 Plaintiff shared "lots of moments of 'post trauma'" that triggered panic attacks (Tr. 657); in

December 2018 Plaintiff needed to work on internal conflict resolution and behavioral choices (Tr. 657); in January 2019 Plaintiff was "freaking out" over "little things" and "'packing to leave' syndrome'" (Tr. 657-58); and in her final session in February 2019 Plaintiff reported she was "very unhappy, [in] relationship crisis, waking up feeling 'bizarre' and angry" (Tr. 658).

Based on this record the Court concludes the ALJ erred when he concluded Dr. Schwartz's opinion was inconsistent with his treatment notes.

### b.    Level of Treatment

The ALJ also discounted Dr. Schwartz's opinion on the ground that Plaintiff "has not received the level of treatment one would see with an individual experiencing disabling psychological symptomatology resulting in a lack of employ-ability on any level."  Tr. 21.  The ALJ, however, did not offer any evidence or explanation to support this conclusion.

Because the ALJ's conclusion is not supported by or consistent with the record, the Court concludes the ALJ erred when he discounted Dr. Schwartz's opinion based on an

insufficient level of treatment.

### c.    Psychosocial Stressors

The ALJ also discounted Dr. Schwartz's opinion on the ground that a progress note on March 19, 2019, by Dana O'Mary, F.N.P., Plaintiff's primary-care provider, stated Plaintiff's psychological symptoms stem from psychosocial stressors rather than acute episodes of depression, anxiety, or PTSD triggers.  Tr. 21, 533.

F.N.P. O'Mary, however, noted Plaintiff has a history of PTSD ("3 dead husbands," a breakup with her boyfriend who had "psychological problems," and arguments with friends), and Plaintiff reported "worsening anxiety attacks with the recent stressors."  Tr. 533.  Notably, this record is after Dr. Schwartz's assessment of Plaintiff's limitations on March 5, 2019, and, therefore, they do not constitute a legitimate conflict with Dr. Schwartz's opinion.  Plaintiff asserts it is reasonable to conclude these stressors made Plaintiff's symptoms worse rather than creating them.  The Court agrees.

On this record the Court concludes the ALJ erred when he discounted the persuasiveness of Dr. Schwartz's medical opinion based on a conflict with the progress note by

F.N.P. O'Mary.

In summary, the Court concludes the ALJ erred in his evaluation of the persuasiveness of the medical opinions of Drs. Roman and Schwartz under the new regulations.

## III. **The ALJ did not provide legally sufficient reasons for adopting the nonexamining physicians' assessments of Plaintiff's RFC.**

Plaintiff contends the ALJ erred when he adopted the opinions of nonexamining, state-agency medical consultants Martin Kehrli, M.D.; Ben Kessler, Psy.D.; Thomas Davenport, M.D.; and Scott Kaper, Ph.D.

### A.  **Standards**

As noted, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017). *See* 20 C.F.R. § 404.1520c(a).  Instead the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on "supportability" and "consistency" using the factors specified in the regulations.  20 C.F.R. § 404.1520c(c).

**B.    Analysis**

On July 5, 2017, Dr. Kessler diagnosed Plaintiff with
bipolar disorder, depression, and PTSD.  He assessed Plaintiff's
mental RFC and concluded Plaintiff has the ability to remember
and to understand only simple instructions; can carry out and
maintain concentration, persistence, and pace for only simple
tasks; is limited to cursory contact with coworkers; and is
limited to only occasional contact with the general public.
Tr. 88-89.

On July 6, 2017, Dr. Kehrli assessed Plaintiff's
physical RFC and concluded Plaintiff is limited to medium work;
can only lift and carry 50 pounds occasionally and 25 pounds
frequently; can stand and/or walk for six hours in an eight-hour
workday; and can sit for six hours in an eight-hour workday.
Tr. 86-87.

On February 6, 2018, Dr. Kaper issued an evaluation of
Plaintiff's mental RFC (Tr. 120-22) that is identical to
Dr. Kessler's evaluation.  On the same date Dr. Davenport issued
an evaluation of Plaintiff's physical RFC (Tr. 103-04) that is
also identical to Dr. Kehrli's evaluation.

The ALJ adopted the assessments of the nonexamining

consultants, but he limited Plaintiff to light work rather than

medium work.  Tr. 22.  The ALJ noted:

> The State agency consultants are highly qualified
> medical sources who are also experts in the
> evaluation of medical issues in disability claims
> under the Act.  The regulations provide that
> treating and examining relationships are more
> persuasive than nonexamining relationships by
> nature.  [Citation omitted].  However, the State
> agency examiners have familiarity with the
> medical evidence and an understanding of the
> disability program's policies, and evidentiary
> requirements such that appropriate consideration
> has been given to their determinations.

Tr. 22.  The Commissioner contends the ALJ satisfied the

articulation requirements when he found the state-agency

opinions "understated" Plaintiff's physical limitations and were

not persuasive.  Def.'s Br. at 15.

The articulation requirements of the new regulations

provide the Agency will "explain how we considered the

supportability and consistency factors for a medical source's

opinions or prior administrative medical findings in your

determination or decision."  20 C.F.R. § 404.1520c(b)(2).  The

ALJ, however, stated only that he adopted the state-agency

doctor's opinions because they "are highly qualified" and "have

familiarity with the medical evidence and . . . the disability

program's policies."  Tr. 22.  In addition, the ALJ did not

provide any explanation as to how the objective medical evidence supported the nonexamining doctors' opinions or why their opinions were consistent with the evidence.

Accordingly, on this record the Court concludes the ALJ failed to provide legally sufficient reasons for adopting the opinions of Drs. Kehrli, Davenport, Kessler, and Kaper regarding Plaintiff's RFC.

## IV.  The ALJ failed to provide legally sufficient reasons for discounting the statements of the lay witnesses.

Plaintiff contends the ALJ erred when he failed to provide legally sufficient reasons for rejecting the lay-witness statements of Guthrie Crawford, Jon Correll, George Rode, and Doyle Shaw, Plaintiffs' friends, and Jon S., Plaintiff's brother, regarding Plaintiff's symptoms.

### A.  Standards

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).  The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir.

31 - OPINION AND ORDER

2006).  Germane reasons for discrediting a lay-witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  *See also Williams v. Astrue*, 493 F. App'x 866 (9th Cir. 2012).

        The ALJ is not required, however, "to discuss every witness's testimony on a[n] individualized, witness-by-witness basis.  Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).  Although the ALJ must consider evidence from nonmedical sources pursuant to § 404.1520c(d) of the new regulations, the ALJ is "not required to articulate how [he] consider[s] evidence from nonmedical sources" and he does not have to use the same criteria as required for medical sources.  The regulations, however, do not eliminate the need for the ALJ to articulate his assessment of the lay-witness statements.

    **B.    Analysis**

        Crawford reports Plaintiff gets upset, has outbursts,

and "just leaves" when stressed.  He noted Plaintiff gets upset
when she cannot remember things and has outbursts that she has a
hard time controlling.  Tr. 327-32.  Rode described Plaintiff as
a "[v]ery sweet person until something goes wrong or not
expected," and then Plaintiff starts to "tense up," quiver,
raises her voice, and "get[s] close to abusive."  Tr. 376.  Shaw
described Plaintiff as a "really nice person" until she has a
PTSD episode and starts crying.  Tr. 374.  Correll also stated
Plaintiff has frequent episodes at night, wakes up in tears, and
"will jump in her car and leave, spending the night in her car
crying."  Tr. 360.  Jon S., Plaintiff's brother, noted the
stress and abuse that he and Plaintiff went through as children,
but he described Plaintiff as a "very good person overall."
Tr. 372.

        The ALJ "considered the supportive statements and
observations . . . concerning [Plaintiff's] impairments and
associated decreased work capacity" when assessing Plaintiff's
RFC.  Tr. 22.  The Commissioner contends these statements
"mirrored" Plaintiff's symptom testimony, and the ALJ reasonably
gave more weight to the objective medical evidence than to the
lay-witness statements.

The ALJ ultimately concluded the lay-witness statements are "neither inherently valuable or persuasive when compared to the objective medical evidence" (Tr. 22), but he did not provide an assessment of the lay-witness statements. As noted, although the ALJ is not required to use the same factors as required for medical sources, he is still required to articulate his analysis and his reasons for discounting such statements. *See Joseph R. v. Comm'r of Soc. Sec.*, No. 3:18-cv-01779-BR, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019).

On this record the Court concludes the ALJ erred when he failed to articulate his reasons for discounting the lay-witness statements.

## REMAND

The decision whether to remand for further proceedings or for payment of benefits generally turns on the likely utility of further proceedings. *Carmickle*, 533 F.3d at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for

34 - OPINION AND ORDER

determining when evidence should be credited and an immediate
award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172,
1178 (9th Cir. 2000).  The court should grant an immediate award
of benefits when

> (1) the ALJ has failed to provide legally sufficient
> reasons for rejecting such evidence, (2) there are no
> outstanding issues that must be resolved before a
> determination of disability can be made, and (3) it is
> clear from the record that the ALJ would be required
> to find the claimant disabled were such evidence
> credited.

*Id.*  The second and third prongs of the test often merge into a
single question:  Whether the ALJ would have to award benefits
if the case were remanded for further proceedings.  *Id.* at 1178
n.2.

        As noted, the Court has concluded the ALJ erred when he
failed to provide legally sufficient reasons supported by
substantial evidence in the record for discounting Plaintiff's
testimony regarding her mental-health symptoms, for discounting
the persuasiveness of the medical opinions of Drs. Roman and
Schwartz regarding Plaintiff's limitations, for adopting the
opinions of the state-agency nonexamining physicians over those
of the treating and examining physicians, and for failing to
articulate his reasons for discounting the lay-witness

statements.  Thus, the Court concludes consideration of the record as a whole establishes that the ALJ would be required to find Plaintiff disabled and to award benefits to Plaintiff if this evidence is credited.

Accordingly, the Court remands this matter for the immediate calculation and payment of benefits.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 12th day of February, 2021.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge